UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61964-Civ-COHN (JORDAN)
(10-60040-Cr-JORDAN)
MAGISTRATE JUDGE P. A. WHITE

LORENZO SCARBORO,               :

    Movant,                     :

                                :           REPORT OF
v.                              :    MAGISTRATE JUDGE FOLLOWING
                                :       EVIDENTIARY HEARING

UNITED STATES OF AMERICA, :

    Respondent.                 :
_____

I. Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking the lawfulness of his convictions and sentences following a guilty plea entered in Case No. 10-60040-Cr-Jordan. Movant filed his motion to vacate pro se. Counsel was subsequently appointed to represent movant once it was determined that an evidentiary hearing was required in this case. Movant is currently represented by court appointed counsel Kenneth White.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion (Cv-DE# 1); the government's response to an order to show cause (Cv-DE# 7); the Presentence Investigation Report (PSI) and Addenda thereto; and all pertinent portions of the underlying criminal file. The undersigned has also considered the witness testimony presented at the evidentiary hearing conducted on September 11, 2012.

## II. Claims

Scarboro raises the following grounds for relief:

1.   He received ineffective assistance of trial counsel, because his lawyer failed to object to the career offender status based on the unconstitutionality of Fla.Stat. §893.13, after he requested counsel to do so.

2.   He received ineffective assistance of trial counsel, because his lawyer failed to object to the career offender enhancement where the prior charges of cocaine delivery were unconstitutionally obtained.

3.   He received ineffective assistance of trial counsel, because his lawyer failed to object to paragraphs 36, 38, 42, 44, 45, 49, 50 of the PSI where affidavits and police reports were relied upon to establish his criminal history.

4.   He received ineffective assistance of counsel, because his lawyer failed to file a notice of direct appeal after he made several requests for counsel to do so.

5.   This Court erroneously added two points based upon the Recency Act, because he had not committed the instant offenses less than two years from release and the Sentencing Commission had amended the Guidelines, eliminating criminal history points based on "recency."

6.   He received ineffective assistance of trial counsel, because his lawyer failed to object to the amount of drugs he was held accountable for under U.S.S.G. §2D1, where the drug transactions were not in furtherance of the conspiracy and were, therefore, not relevant conduct pursuant to U.S.S.G. §1B1.3.

7.   He received ineffective assistance of trial counsel with regard to the entry of his guilty pleas, because trial counsel failed to properly explain the consequences of his plea.

### III. Factual Background and Procedural History

#### A. Offense Conduct[1]

In brief, the facts of the case are as follow. In February

_____

[1] The facts of this case have been obtained from the factual proffer which Scarboro executed and which was stipulated to as accurate during the change of plea proceeding (Cr-DE# 31, 69), and the PSI which summarized the offense conduct in this case. See PSI at ¶¶8-17.

2009, ATF and other law enforcement agents established a store as an undercover operation. During the course of the investigation, it became known that employees of the undercover store were buying firearms, drugs and other contraband. From June 2009, through December 2009, Roderio Lesane met several times with an undercover agent (UC) at the undercover store. During the meetings, Lesane produced a white powdery substance believed to be cocaine. He was making the delivery and sale for Lorenzo Scarboro. Lorenzo Scarboro was a drug dealer who used Roderio Lesane as an intermediary to sell cocaine and cocaine base to the UC.

During certain meetings between the UC and Lesane, Scarboro was present and he and the UC engaged in direct discussions regarding the price and quality of the cocaine. The UC also talked on the telephone with Scarboro, negotiating the price and quantity of the cocaine. Additionally, Scarboro met with the UC at the undercover store on numerous occasions, selling various quantities of cocaine and/or cocaine base. Video surveillance revealed Scarboro counting money in the presence of Lesane; entering the truck with the money; and then departing the area with an unknown driver. Video surveillance also revealed that after Lesane exited the store, he met with Scarboro in the parking lot and handed him an unknown item. The transactions between Scarboro and the UC were also video and audio recorded. Lesane had been involved in four transactions between June 26 and July 9, 2009, in which he sold a total of 127.3 grams of cocaine and twenty-four Vicodin pills. Scarboro was held accountable for the 127.3 grams of cocaine sold by Lesane and an additional 452.2 grams of cocaine he sold between July 11 and December 4, 2009. Scarboro was additionally held accountable for 28.7 grams of crack cocaine. Scarboro was, therefore, found accountable for a total of 579.5 grams of cocaine, twenty-four Vicodin pills, and 28.7 grams of cocaine base.

B. Indictment, Plea Agreement and Change of Plea Proceedings

Scarboro was charged in seventeen counts of an eighteen-count Indictment returned on February 9, 2010, with the offenses of conspiracy to possess with intent to distribute a detectable amount of cocaine (Count 1); possession with intent to distribute a detectable amount of cocaine (Counts 3-13, 15-18); and possession with intent to distribute five grams or more of cocaine base, commonly known as "crack cocaine" (Count 14). See Indictment. (Cr-DE# 3). Approximately two months after having entered pleas of not guilty to the crimes charged, Scarboro entered into a negotiated written plea agreement with the government. See Plea Agreement. (Cr-DE# 30). Scarboro agreed to plead guilty to the crimes charged in Count 1 and Counts 6 through 18 of the Indictment and, in exchange, the government agreed to dismiss Counts 3 through 5 after sentencing. Id. at ¶¶1, 2.

The written plea agreement advised Scarboro of the maximum penalties the Court could impose. Id. at ¶4. Specifically, as to Counts 1, 6 through 13, and Counts 15 through 18, the maximum sentence was twenty-years' imprisonment followed by a term of supervised release of no less than three years up to life. Id. at ¶4. As to Count 14, there was a minimum mandatory term of five years' imprisonment and a statutory maximum term of up to forty years' imprisonment followed by a term of supervised release of no less than four years up to life. Id. By executing the written plea agreement, Scarboro acknowledged that he understood the possible maximum penalties and further acknowledged that he understood that the sentence would be computed based on the advisory sentencing guidelines and that the applicable guidelines would be determined by the Court relying in part on the results of a presentence investigation by the probation officer, which investigation would commence after the guilty plea has been entered. Id. at ¶¶3-4. Scarboro additionally indicated that he understood that while the Court was required to consider the advisory guideline range, it was

not bound to impose that sentence and could depart upward or downward from the advisory sentencing guideline range. Id. at ¶3. Scarboro also indicated that he understood that the Court had the authority to impose any sentence within and up to the maximum authorized by law and that he could not withdraw the plea solely as a result of the sentence imposed. Id.

The agreement also provided that the government reserved the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as facts concerning the defendant and the defendant's background. Id. at ¶6. By entering into the agreement, the government agreed to recommend that Scarboro receive an offense level reduction for acceptance of responsibility and recommend to the Court that sentence be imposed at the low end of the sentencing guideline range. Id. at ¶7. The agreement further provided that at the time of sentencing, the government would not oppose the Court's consideration of a reasonable variance from the applicable guideline range, based upon the Department of Justice's recognition of sentencing disparities between crack and powder cocaine. Id. at ¶8. The agreement went on to provide that if the Court determined that Scarboro qualified as a career offender pursuant to U.S.S.G. §4B1.1, the government and Scarboro agreed to jointly recommend that the Court apply a base offense level of 32, pursuant to U.S.S.G. §4B1.1(b)(C). Id. The government also agreed not to seek an upward adjustment, pursuant to U.S.S.G. §3B1.1(c) for an aggravating role. Id. at ¶9.

The plea agreement contained an appeal waiver whereby Scarboro agreed that, in exchange for the government's recommendations to the Court with regard to the sentence to be imposed, he would waive his right to a direct appeal from his sentence, unless the sentence

5

exceeded the maximum permitted by statute or was the result of an upward departure and/or a variance from the guidelines range. Id. at ¶11. Scarboro stated that he had discussed the appeal waiver with his attorney before entering into the plea agreement. Id. Scarboro further agreed, together with the government, to request that the Court enter a specific finding that the appeal waiver was knowing and voluntary. Id. Finally, the agreement provided that the written plea agreement constituted the entire agreement and understanding between the United States and movant and that there were no other agreements, promises, representations or understandings. Id. at ¶12.

Besides the plea agreement, Scarboro additionally executed a Stipulated Factual Basis which set forth in detail the facts of the case to which he was pleading guilty. (Cr-DE# 31). By executing the document, Scarboro indicated that the government would have proved the facts as recited therein beyond a reasonable doubt, if the case had proceeded to trial. Id. After executing the plea agreement and factual proffer, Scarboro appeared for change of plea proceedings. See Transcript of Plea Colloquy conducted on April 5, 2010. (Cr-DE# 69). The Court conducted a careful and meticulous plea colloquy pursuant to Fed.R.Crim.P. 11 during which Scarboro was sworn. The Court first obtained personal background information from Scarboro. Id. at 3-6. Scarboro informed the Court that he was thirty-three years old and had an eleventh grade education. Id. at 3-4. The Court next asked Scarboro whether he had received a copy of the Indictment and whether he had reviewed the charges and the case with trial counsel. Id. at 6. Scarboro answered the questions with, "Yes, Sir." Id. Scarboro also informed the Court that he had fully discussed the case with counsel, entry of the guilty pleas, and any defenses strategies if he had instead proceeded to trial. Id. at 6-7. Scarboro went on to assure the Court that he had been satisfied with the representation received from trial counsel throughout the

entire case. Id. at 7.

The Court next read to Scarboro the charges contained in the Indictment to which he was entering his guilty pleas and what the government would have had to prove if he had proceeded to trial. Id. at 7-14. Scarboro told the Court that he understood the elements of the charges. Id. Scarboro was next advised of the maximum possible penalties that could be imposed on these crimes. Id. at 8-14. Specifically, he was told that as to Counts 1, 6-13, 15 and 16, there was a maximum possible sentence of imprisonment of twenty years to be followed by a term of supervised release up to three years. Id. at 8, 10-11, 13-14. As to Count 14, there was a mandatory minimum term of imprisonment of five years and a maximum term of forty years to be followed by a term of supervised release of at least four years. Id. at 12-13. When asked if he understood all the possible penalties he faced, Scarboro told the Court that he did. Id. 8-14. The Court asked Scarboro if he had discussed the advisory sentence guidelines with trial counsel and how the guidelines might affect his case, and he answered that he had. Id. at 14. The Court went on to inform Scarboro that the sentencing guidelines were advisory and not binding on the Court and that the guideline range would be considered along with various other sentencing factors, such as, his criminal history and background. Id. at 15. Scarboro once again told the Court that he understood. Id.

As he had been advised in the plea agreement, the Court told Scarboro that any estimate of the sentence to be imposed given to him by trial counsel or anyone else was merely a prediction or an estimate and not a promise in that the sentence would not be determined until after the Court had had the opportunity to review the PSI and received comments and objections from the parties. Id. at 15. Scarboro unequivocally stated that he understood. Id. He

further told the Court that he understood that he could not withdraw the guilty pleas solely as a result of the sentence he might receive or because the Court did not follow any recommendations from trial counsel or the government. Id. at 15-16.

The Court next discussed with Scarboro the written plea agreement, asking him if he had read the agreement and if the signature on the agreement was in fact his. Id. at 16. Scarboro answered "yes," to both questions and additionally told the Court that he had fully discussed the plea agreement with counsel before signing it and that he understood all the terms of the agreement before executing the agreement. Id. at 16-17. The Court also reviewed the provisions of the plea agreement with Scarboro and Scarboro again indicated that he understood those provisions. Id. at 17-24. With regard to paragraph eight of the plea agreement, involving career offender sentencing, the Court explained in great detail the meaning of the paragraph after which Scarboro told the Court that he understood and had no questions about the sentencing guidelines and career offender sentencing. Id. at 19-21.

As to the appeal waiver provision of the agreement, the following exchange took place between the Court and Scarboro:

> THE COURT:    Paragraph 11 contains appeal waiver language, Mr. Scarboro. Let me tell you about your appellate rights before we discuss this waiver.
>
> Under Section 3742 of Title 18 of the United States Code, you have the right to appeal your conviction and whatever sentence I will ultimately impose. That is a right given to you by statute, and no one can take that right away from you.
>
> You can appeal on a number of grounds that might be available to you. For example, if you think that I misapplied and misinterpreted the advisory Sentencing Guidelines, let's say that I made a mistake

8

in saying that you were a career offender
when you were not, and if that affected your
sentence, you could appeal.

If you think I got the facts about you and
your involvement in the case wrong, for
example, if you think that I attributed too
much cocaine or crack cocaine to you in light
of the transactions that you were involved
in, and you think that affected your
sentence, you could appeal.

And even if you think I did everything else
correctly, if you thought that I imposed a
sentence that was not reasonable, in light of
the factors that I have to consider, you
could appeal on that ground, too.

Do you understand your right of appeal?

THE DEFENDANT:   Yes, sir.

THE COURT:   You say in paragraph 11 that you are giving
up this right of appeal, subject to a couple
of exceptions that I'll explain to you in a
moment.

Is that what you've generally agreed to do?

THE DEFENDANT:   Yes, sir.

THE COURT:   The exceptions are as follows: If I impose a
sentence that exceeds the maximum permitted
by statute, you can appeal. If I impose a
sentence based upon an upward departure or
upward variance from the applicable Guideline
range, you can appeal. And if the government
decides to appeal for any reason whatsoever,
then you are released from your appeal
waiver, and you can appeal on whatever
grounds you and [Assistant Federal Public
Defender] Ms. Bharathi believe are available
to you.

Do you understand the exceptions to your
appeal waiver?

THE DEFENDANT:   Yes, sir.

Id. at 22-3. Scarboro also told the Court that no promises had been
made to him to get him to plead guilty other than those contained
in the written plea agreement. Id. at 23. Trial counsel and counsel

for the government informed the Court that there were no other agreements or understanding contained in the written plea agreement. _Id_. at 24.   Scarboro went on to deny that anyone had threatened or forced him to enter a guilty plea and he indicated that he was pleading guilty of his own free will. _Id_.

During the colloquy, Scarboro was fully advised that he had a right to proceed to trial before a jury and that by entering the guilty plea he was waiving all his constitution rights associated with a jury trial, such as the right to confront witnesses against him, the right to challenge the government's evidence, the right to testify in his own behalf, and the right to call witnesses in his defense. _Id_. at 24-26. Scarboro repeatedly told the Court that he understood his various constitutional rights and that he was waiving those rights and that he had no questions. _Id_.

With regard to the facts of the offenses, the Court asked Scarboro if he had in fact executed the document entitled, "Stipulated Factual Basis" and if he had reviewed it with trial counsel before signing it _Id_. at 26. Scarboro indicated that he had and told the Court that the information contained in the document was correct. _Id_. The Court next asked: "In light of what is set forth in this stipulated factual basis, Mr. Scarboro, how do you plead to the charges set forth in Counts 1 and 6 through 18 of the Indictment? Guilty or not Guilty." _Id_. at 27. Scarboro responded, "Guilty." _Id_. The Court went on to accept the change of plea, expressly finding that Scarboro was fully competent and capable of entering an informed plea, that Scarboro was aware of the nature of the charges and the consequences of the plea, and that the knowing and voluntary plea made without coercion or intimidation was supported by an independent basis in fact containing each of the essential elements of each offense. _Id_. at 27. Before concluding the proceeding, the Court advised Scarboro that a Presentence

10

Investigation Report would be prepared before sentencing and that
both parties would have the opportunity to file comments and
objections, and Scarboro indicated that he understood. <u>Id</u>. at 27-
28.

   C. <u>Presentence Investigation Report and Sentence Proceedings</u>

     The PSI extensively detailed the pertinent facts of the case
and Scarboro's role in the offense conduct. <u>See</u> Presentence
Investigation Report at ¶¶7-17. The probation officer determined
that pursuant to U.S.S.G. §2D1.1(c)(6) and §2D1.1, comment
n.10(A)(ii), the base offense level was 26. <u>Id</u>. at ¶22. With no
other applicable adjustments, the adjusted base offense level was
26. <u>Id</u>. at ¶¶23-27. The probation officer determined that Scarboro
was a career offender, because he was at least 18 years of age at
the time of the instant offense, the instant offense was a felony
controlled substance offense, and he had at least two prior felony
convictions of a controlled substance offense. <u>Id</u>. at ¶28. The PSI
indicated that Scarboro had been convicted in Broward County
Circuit Court Case Nos. 99-8881CF10A, 99-15361CF10A and
02-13222CF10A of the offenses of delivery of cocaine, possession
with intent to deliver cocaine, and delivery with intent to sell
cocaine, respectively. <u>Id</u>. at ¶¶ 36, 38 and 45. Since the statutory
maximum penalty for the instant offense was 40 years, the offense
level was adjusted to 34 pursuant to U.S.S.G. §4B1.1(b)(B). <u>Id</u>. at
¶28. Scarboro was afforded a three-level reduction pursuant to
U.S.S.G. §3E1.1(a) and (b) for his acceptance of responsibility and
assistance in the investigation of the case, thereby, decreasing
his base offense level by three levels, giving him a total offense
level of 31. <u>Id</u>. at ¶¶28-31.

     Scarboro had a subtotal of eight criminal history points,
however, pursuant to U.S.S.G. §4A1.1(c), a maximum of four points
could be counted. <u>Id</u>. at ¶52. Since Scarboro committed the instant

offenses less than two years from his release from custody, an additional two points were added pursuant to U.S.S.G. §4A1.1(e). _Id_. at ¶53. Scarboro, therefore, had a total of eight criminal history points which would have resulted in a criminal history category of IV, but due to his career offender status, he had a criminal history category of VI. _Id_. at ¶54. Based on a total offense level of 31 and a criminal history category of VI, the resulting guideline range was 188 to 235 months in prison. _Id_. at ¶85. As to Counts 1, 6 through 13 and 15 through 18, the statutory term of imprisonment was zero years to twenty years pursuant to 21 U.S.C. §841(b)(1)(C). _Id_. at ¶84. As to Count 14, the minimum term was five years and maximum term of imprisonment was forty years. _Id_. The statutory term of supervised release was at least three years as to Counts 1, 6 through 13 and 15 through 18, and at least four years as to Count 14. _Id_. at ¶86. A term of supervised release was four to five years pursuant to the applicable guidelines provisions. _Id_. at ¶87.

Trial counsel filed objections to the PSI, arguing that: (1) should the Court determine that Scarboro was a career offender, it should honor the agreement between the parties that, because the existing sentencing disparities between crack and powder cocaine are unjustified, Scarboro's offense level before adjustment for acceptance of responsibility was more appropriately 32 as opposed to 34 as indicated in paragraph 28; and (2) Scarboro should not receive two points pursuant to §4A1.1(e) (recency points), as provided for in paragraph 53 in that the Sentencing Commission had voted to delete those points. _See_ Defendant Scarboro's Objections to the Presentence Investigation Report. (Cr-DE# 49). Trial counsel also filed a sentencing memorandum, essentially arguing that Scarboro's unique history and characteristics, along with recited problems with applying the career offender guideline in this specific case, supported a downward variance. _See_ Defendant

12

Scarboro's Sentencing Memorandum in Support of Downward Variance. (Cr-DE# 50). In support of the downward variance, trial counsel had prepared a fourteen minute video recording to be played at sentencing. See Cr-DE# 51.

Sentencing proceedings took place on August 20, 2010, during which trial counsel asserted that the plea agreement contemplated a total offense level of 29, a criminal history category of six, resulting in a sentencing guidelines range of 151 to 188 months' imprisonment. See Transcript of Sentencing Hearing at 4. (Cr-DE 68). The government stated that, while the Probation Officer had accurately calculated the sentencing guidelines range, the government recommended that the Court sentence Scarboro pursuant to the terms of the plea agreement. Id. at 3-4. Trial counsel then played the videotape recording for the Court after which counsel extensively argued to the Court that the appropriate sentence under all circumstances of this case was 80 to 90 months' imprisonment. Id. at 5-12. Scarboro also personally addressed the Court, attempting to offer explanation for the subject criminal behavior and his criminal history. Id. at 12-15, 20. The government next maintained that based upon Scarboro's criminal history, he was appropriately classified as a career criminal, and a sentence of 151 months was the correct sentence in this case. Id. at 15-19.

The Court adopted the PSI but determined that, based on the plea agreement, Scarboro's base offense level was 32, resulting in a total offense level of 29, criminal history category of VI, and imprisonment range of 151-188 months. See Statement of reasons. See also Judgment. (Cr-DE# 55). However, based upon the particular circumstances of this case, the Court sentenced Movant below the advisory guideline range to a term of imprisonment of 96 months and above the advisory guideline range as to supervised release for a

term of supervised release of six years.[2] Id. at 21-28. Before

---

[2]The Court thoroughly and in great detail discussed Scarboro's personal background and criminal history and then went on to provided extensive reasons for the sentence to be imposed, stating in pertinent part as follows:

> So, I am going to try to fashion a sentence that I believe is appropriate in this case, given all of the facts that point to very different directions.
>
> I am going to vary from the bottom of the advisory Guidelines in this case, and I am going to impose a sentence in this case of eight years. That will be a sentence of 96 months. Let me say why I am imposing that sentence.
>
> First, I am considering the offense for which Mr. Scarboro was convicted in the overall scheme of the career offender guidelines in this case. Given the fact that he was involved with a little bit more than half a kilogram of powder cocaine overall, I don't think a sentence at the statutory minimum is appropriate.
>
> But, again, the convictions that make him a career offender are convictions that are distant. Three of them are from 14 - - two -- excuse me -- one of them is 14 years ago, two others are 11 years ago, and another one is eight years ago. And I think I should take that into account in figuring out whether to impose a sentence within the advisory Guidelines in this case.
>
> I haven't disregarded the career offender guidelines completely, because if I had, and if I thought that they were inappropriate completely in this case, then I would sentence where the regular advisory Guidelines would place Mr. Scarboro. I haven't done that. And I've sentenced at approximately two to three years higher than that to take into account his criminal history in this case.
>
> I also think that a sentence of eight years for someone in Mr. Scarboro's situation provides sufficient individual punishment, and provides individual and general deterrence. I don't think anyone on the street who intends to commit the offenses that Mr. Scarboro was convicted of will think that eight years is a slap on the wrist, and that selling a couple of rocks of crack cocaine or some Vicodin pills or some powder is going to be worth an eight-year sentence in federal prison.
>
> I've taken into account the circumstances of the offense, which I've layed [sic] out in terms of the drugs and the amounts that were involved. And as I've indicated before, I've taken into account the history and characteristics of Mr. Scarboro himself.
>
> So, although I am sure that neither party is going to be happy with the sentence that I've imposed, I think that is, under difficult circumstances, the right sentence to impose in this case, taking into account all of these varied factors.
>
> So, I've considered the statements of the parties and the Presentence Investigation Report. I've considered the advisory Guidelines, and I've considered the statutory sentencing factors. Again, I am varying from the bottom of the advisory Guidelines to a sentence of 96 months in this case.
>
> Had Mr. Scarboro's cocaine convictions been more recent in time, I likely would have varied some, but probably would not have varied as much as I have in this case....

(Transcript of Sentencing Hearing at 25-27)(DE# 68).

concluding sentencing, the Court asked trial counsel and Scarboro whether there were any objections to the Court's findings of fact, conclusions of law or the manner in which sentence was pronounced. See Transcript of Sentencing Hearing at 30. Trial counsel had no objections and Scarboro voiced no objections, and twice thanked the Court. Id. at 30, 32. Although Scarboro had agreed to an appeal waiver in his Plea Agreement, Scarboro was advised by the Court that he had the right to appeal his convictions and sentences and that a notice of appeal must be filed within fourteen days after entry of the judgment. Id. at 31. Scarboro was also advised that if he was financially unable to pay the costs of the appeal, he could apply to proceed in forma pauperis. Id. at 31-32. The Court informed Scarboro that his appellate rights were subject to any agreement entered into with the government, and Scarboro answered affirmatively when asked if he understood. Id. at 32.

### D. Direct Appeal and Postconviction Proceedings

No notice of appeal was ever filed and Scarboro, therefore, did not pursue a direct appeal. Just shy of one-year after judgment was entered, Scarboro filed the instant pro se motion to vacate pursuant to 28 U.S.C. §2255,[3] attacking the convictions and sentences on the grounds set forth above.[4] (Cr-DE# 67; Cv-DE# 1). An order to show cause was entered, and the government filed its response, arguing that summary denial of the motion was warranted as to all claims excluding ground four in that the claims were procedurally barred and/or meritless. See United States' Answer to Movant's Motion to Vacate Sentence Under 28 U.S.C. §2255. (Cv-DE#

---

[3]This Court applies the "mailbox rule" and deems the motion to vacate filed on the date it was delivered to prison authorities for mailing. See Adams v. United States, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). See also Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[4]The government properly concedes that the motion to vacate has been filed within one year after Movant's conviction and sentence became final and is, therefore, timely. See 28 U.S.C. §2255(f).

7). However, as to ground four, the government conceded that the Court could not dispose of the ground without first conducting an evidentiary hearing for the limited purpose of determining whether Scarboro directed counsel to pursue a direct appeal. <u>Id</u>.

Upon review of Scarboro's pleadings and the government's response, the undersigned found that Scarboro was entitled to an evidentiary hearing on his claim that counsel rendered ineffective assistance when he failed to pursue a direct appeal, as requested. <u>See Gomez-Diaz v. United States</u>, 433 F.3d 788 (11th Cir. 2005)(finding an evidentiary necessary to determine whether the defendant's statement of his desire to appeal was sufficient to trigger the per se duty to appeal outlined in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). <u>See also Aron v. United States</u>, 291 F.3d 708, 714-15 (11th Cir. 2002)("[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.")(internal quotations omitted). Counsel was, therefore, appointed to represent Scarboro and evidentiary proceedings were scheduled. (Cv-DE# 13).

An evidentiary hearing was conducted in this case on September 11, 2012, during which sworn testimony was taken from Scarboro, the sole witness called to testify at the hearing. Although postconviction counsel attempted to question Scarboro as to other issues raised in the motion to vacate, he was not permitted to do so. After finally properly narrowing his questions, counsel asked movant whether he had telephoned or "in any way" communicated with his trial attorney regarding appealing his sentence. Scarboro simply answered, "No, I didn't." When asked the question one more time, Scarboro repeated his answer that he had not done so. When next asked if there had been anything that had prevented him from contacting or communicating with former trial counsel regarding

16

appealing his sentence, Scarboro again merely responded: "No, there wasn't." Appointed postconviction counsel then pointed out to Scarboro that his §2255 motion raised the claim that trial counsel had failed to pursue a direct appeal on his behalf, as he had requested. Scarboro responded that he now knew the contents of his motion, but he had not prepared the motion; the motion had been prepared by inmate writ writer Derrick Yarborough; and Yarborough had told him that his appellate rights could be restored. Scarboro testified that he did not pay attention to how the claim had been worded, he was not knowledgeable about such motions, and that he "just went on with what [Yarborough] said." After providing this damaging testimony, appointed counsel asked Scarboro whether he had anything else to tell the Court with regard to ground four that counsel had rendered ineffective assistance for failing to file an appeal after having been requested to do so. Scarboro answered in the negative, stating that he had not been aware of what the inmate writ writer had done. Scarboro then stated: "All I can say is simply sorry to the court."

The undersigned then addressed appointed postconviction counsel and asked counsel if it was his intention to withdraw ground four of the motion. Counsel answered in the affirmative, but stated that Scarboro wished to proceed with the other grounds raised in his motion. Appointed counsel conceded that he could not argue a good faith nexus between those other grounds raised and ground four to warrant additional testimony from Scarboro on the other issues. Consequently, counsel was not permitted to present testimony as to any other ground raised in the motion. At the behest of the undersigned, appointed counsel then conducted a colloquy with Scarboro. The colloquy indicated that Scarboro no longer wished to proceed with ground four and that his withdrawal of the claim was knowingly, intelligently and voluntarily made. Scarboro testified that no one had forced, threatened or coerced

17

him to withdraw ground four.

Based upon the colloquy conducted during the evidentiary hearing, the undersigned finds that the movant's decision to withdraw ground four was knowingly and voluntarily made, after consultation with counsel, and not as a result of threats or coercion either by the government or movant's counsel. Based upon the withdrawal of ground four, it logically follows that all other grounds which challenge the lawfulness of the sentence (i.e., all claims other than ground seven) are subject to dismissal as well without further discussion. However, the undersigned will, instead, address the other claims included in the §2255 motion, while not necessarily on the merits due to applicable procedural bars.

## IV. Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. In determining whether to vacate a movant's sentence, a district court must first determine whether a movant's claim is cognizable under Section 2255. See Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004)(stating that a determination of whether a claimed error is cognizable in a Section 2255 proceeding is a "threshold inquiry"), cert. denied, 543 U.S. 891, 125 S. Ct. 167, 160 L. Ed. 2d 154 (2004). It is well-established that a Section 2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)).

The Eleventh Circuit promulgated a two-part inquiry that a

district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." <u>Id</u>. (*citing* <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Id</u>. at 1232-33 (*quoting* <u>Richards v. United States</u>, 83 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>Frady</u>, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). <u>See also</u> <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted

by the record" or "patently frivolous"). As indicated, an evidentiary hearing was warranted in this case solely as to ground four.

## V. Discussion

In this collateral proceeding, Scarboro attacks the lawfulness of his guilty pleas and resultant sentences and the representation received from counsel with regard to the entry of the pleas and sentences imposed. He claims that his career offender sentence is unlawful in that his state narcotics convictions were improperly used as predicate offenses under U.S.S.G. §4B1.1. For example, he contends that Fla.Stat. §893.13 is unconstitutional. He also alleges that his sentencing guidelines range was incorrectly calculated, because he should not have received a two-point assessment based upon the Recency Act and he should not have been held accountable for the amount of cocaine attributed to him. He additionally claims that his lawyer improperly failed to advise him of the consequences of his pleas, rendering them not knowingly and voluntarily entered.

The government correctly argues that the substantive claims challenging the sentences imposed as an erroneous application of the sentencing guidelines are procedurally barred from postconviction review on the merits. A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Massaro v. United States, 538 U.S. 500 (2003). See also United States v. Frady, 456 U.S. 152 (1982); Lynn v. United States, 365 F.3d 1225, 1234-35 (11th Cir. 2004). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on

direct appeal and actual prejudice resulting from the alleged error or (2) actual innocence. Lynn, 365 F.3d at 1234; Bousley v. United States, 523 U.S. 614, 622-3 (1998). See also Jones v. United States, 153 F.3d 1305 (11th Cir. 1998)(finding that cause and prejudice was not available to movant as a means of avoiding procedural default, but recognizing that actual innocence might still be a viable option); Campino v. United States, 968 F.2d 187, 189-90 (2d Cir. 1992)("[A] procedural default of even a constitutional issue will bar review under Section 2255, unless the petitioner can meet the 'cause and prejudice' test").

The claims now raised by the movant with regard to the lawfulness of his sentence were not raised on direct appeal. Scarboro argues in his motion that counsel was ineffective for failing to pursue the particular sentence challenges either at sentencing or on direct appeal. The claim of ineffective assistance of counsel may constitute cause for a procedural default. See generally Murray v. Carrier, 477 U.S. 478 (1986). "[An] ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). See also United States v. Breckenridge, 93 F.3d 132, 134 n.1 (4th Cir. 1996).

The Eleventh Circuit has held, however, that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005). See also Thompson v. United States, 353 Fed.Appx. 234,

21

235 (11th Cir. 2009)(unpublished); Leach v. United States, 171
Fed.Appx. 765 (11th Cir. 2006); Johnson v. United States, 2007 WL
4615236 *5-6 (S.D. Fla. 2007). As concluded correctly by the
Williams court, to hold otherwise would permit the movant "to
circumvent the terms of the sentence-appeal waiver simply by
recasting a challenge to his sentence as a claim of ineffective
assistance, thus rendering the waiver meaningless." Williams v.
United States, supra. To demonstrate that a sentence-appeal waiver
is sufficiently knowing and voluntary to be enforceable, the
government must show that either (1) the district court
specifically questioned the defendant concerning the sentence
appeal waiver during the colloquy; or (2) it is manifestly clear
from the record that the defendant otherwise understood the full
significance of the waiver. Id. at 1341-42.

    In this case, the government has sustained its burden in that
the record indicates that the appeal-waiver was knowingly and
voluntarily made. The executed plea agreement in paragraph 11
expressly stated that Scarboro and counsel had discussed the appeal
waiver set forth in the agreement. During the change of plea
proceeding, Scarboro acknowledged while under oath that he had read
and understood all terms and conditions of the written plea
agreement before he executed the agreement. The Court thoroughly
reviewed paragraph 11 with Scarboro and Scarboro told the Court
that he understood that, as a term of the plea agreement, he was
giving up his right to an appeal except under certain limited
circumstances and that he had agreed to waive that right. The
movant also acknowledged that he was satisfied with counsel's
representation and advice.[5] Further, after the extensive plea

_____

[5]Scarboro's representations during the plea proceeding, as well as those
of his lawyer and the findings by this Court when accepting the plea, "constitute
a formidable barrier in any subsequent collateral proceedings." Blackledge v.
Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Solemn
declarations in open court carry a strong presumption of truthfulness, and a
defendant bears a heavy burden to show that the plea was involuntary after

colloquy, the Court accepted the change of pleas as having been freely, voluntarily and intelligently made.

It is noted that after sentence had been imposed, the Court fully advised Scarboro that he had the right to take a direct appeal, although that right was subject to his appeal waiver. Scarboro never indicated to the Court that he had reconsidered the appellate waiver provision of the plea agreement. Further, during the evidentiary hearing in this §2255 proceeding, Scarboro unequivocally withdrew his claim that he desired to pursue a direct appeal. Thus, there is no competent evidence of record to suggest that the movant did not understand the significance of the waiver of appeal and did not intend to waive his appellate rights. The record reveals that the waiver did not result in an unlawful denial of his right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government. Under the circumstances presented here, the movant is not only precluded from challenging the manner in which sentence was imposed, but precluded from challenging his sentence in the guise of an ineffective assistance of counsel claim. Williams, supra. Consequently, grounds one, two, three, five and six and any related ineffective assistance of trial counsel claim Scarboro may be raising where he faults counsel for failing to pursue any challenges to his sentence at sentencing or on direct appeal are covered by the appeal waiver and therefore not subject to collateral attack in this proceeding.

---

testifying to its voluntariness in open court. DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994). See also United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any §2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Moreover, Movant's claim that his sentence was imposed in violation of the sentencing guidelines is not reviewable on the merits on an alternate basis. Sentencing errors are generally not cognizable in a collateral attack unless the error complained of resulted in a complete miscarriage of justice. See e.g., Burke v. United States, 152 F.3d 1329 (11th Cir. 1998)(holding that nonconstitutional claims, such as the claim that a sentence was contrary to a subsequently enacted clarifying sentencing guidelines amendment, can be raised on collateral review of a conviction only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994)(stating that, "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under §2255."). See also 28 U.S.C. §2255(a); Gilbert v. United States, 640 F.3d 1293, 1321 (11th Cir. 2011)("Gilbert III")(en banc)(stating that "Gilbert's claim that a sentencing guidelines provision was misapplied to him is not a constitutional claim. If it were, every guidelines error would be a constitutional violation.").[6] Since Movant was afforded due process at the sentencing hearing and has not demonstrated a constitutional violation or an error which resulted in a "complete miscarriage of justice," any challenge to his sentence is not cognizable in this proceeding.

Even if Scarboro were entitled to review on the merits of his sentence attacks raised here, he would not be entitled to

---

[6]It is noted that the Eleventh Circuit in Gilbert explicitly did not address the issue whether a guidelines misapplication claim based on a new Supreme Court rule is cognizable in an initial collateral attack. The Eleventh Circuit concluded that it had "no reason to decide that issue because this is not [the defendant]'s first collateral attack on his sentence." Gilbert v. United States, 640 F.3d 1293, 1306 (11th Cir. 2011).

postconviction relief because his challenges are meritless. <u>See</u> United States' Answer to Movant's Motion to Vacate Sentence Under 28 U.S.C. §2255 at 13-8. For example, with regard to the predicate offenses supporting the career offender designation, the Court properly relied upon the undisputed statements in the PSI regarding the prior criminal conduct which statements were based upon arrest reports. <u>See e.g.</u>, <u>United States v. Beckles</u>, 565 F.3d 832, 843 (11th Cir. 2009)(the sentencing court may use undisputed statements in the PSR to determine whether the defendant's offense was a crime of violence); <u>United States v. Bennett</u>, 472 F.3d 825, 832, 833 (11th Cir. 2006)(holding that court's findings of fact at sentencing may be based upon undisputed PSR statements and concluding that an objection to the probation officer's use of non-*Shepard*[7] materials in preparation of the PSI did not amount to a dispute of the facts). As to the constitutionality of the Florida narcotics statutes, Florida's Comprehensive Drug Abuse Prevention and Control Act, as amended on May 13, 2002, by <u>Fla.Stat</u>. §893.101, has recently been found constitutional. <u>See</u> <u>Shelton v. Secretary, Dept. of Corrections</u>, ____ F.3d ____, 2012 WL 3641008 (11th Cir. 08/24/2012). And, two of the subject predicate convictions were entered in 1999, before the apparently objectionable amendment.

Also, it was not until November 1, 2010, after sentencing had been conducted in this case on August 20, 2010, when the United States Sentencing Commission eliminated criminal history points based on "recency" (i.e., the temporal proximity of the offense of conviction to a prior term of imprisonment). <u>See</u> United States Sentencing Commission, Guidelines Manual, Supp. to Appendix C, Amendment 742, pp. 354–56 (Nov. 1, 2010)(amending §4A1.1(e)). Amendment 742 has not been made retroactive in that it has not been listed as a retroactive amendment in §1B1.10(c). <u>See</u> <u>United States</u>

---

[7] <u>Shepard v. United States</u>, 544 U.S. 13 (2005).

of America v. Gonzalez-Molina, 409 Fed.Appx. 751 (5th Cir. 2011),
citing, §1B1.10(a) & (c), p.s.; United States v. Drath, 89 F.3d
216, 218 (5th Cir. 1996). Scarboro was sentenced in accordance with
law and the written plea agreement in existence at the time of
sentencing and, moreover, the sentence imposed in this case was
more than reasonable even in light of the Sentencing Commission's
"change of position" on recency points. And, Scarboro's challenge
to the amount of drugs attributable to him is meritless. Scarboro
qualified as a career offender, therefore, the aggregate quantity
of drugs, even if erroneous, did not contribute to guidelines
calculation.  Pursuant to the plea agreement, Movant's base offense
level was determined to be 32, as opposed to the probation
officer's determination of 34.

    Since the underlying sentencing challenges have no merit, it
follows that the related ineffective assistance of trial counsel
claims are without merit as well. It should not be overlooked that
Scarboro received a very favorable sentence under the circumstances
of this case and there is nothing whatever in the record to
indicate that the Court would have sentenced him to any other
sentence than he received. Thus, Movant cannot show that he was
prejudiced by counsel's action or, more appropriately inaction,
during sentencing. See Strickland v. Washington, 466 U.S. 668, 687,
694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[8] See also Glover v.

---

[8]The Sixth Amendment affords a criminal defendant the right to "the
Assistance of Counsel for his defence." U.S. CONST. amend. VI. To prevail on a
claim of ineffective assistance of counsel, a habeas petitioner must demonstrate
both (1) that his counsel's performance was deficient, and (2) a reasonable
probability that the deficient performance prejudiced the defense. Strickland v.
Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In
assessing whether a particular counsel's performance was constitutionally
deficient, courts indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable assistance. Id. at 689. "Surmounting
Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. __,
__, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). If the movant cannot meet
one of Strickland's prongs, the court does not need to address the other prong.
Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address
both prongs of Strickland if the defendant makes an insufficient showing on one
of the prongs).

United States, 531 U.S. 198 (2001).[9]

Finally, the record as extensively set out above clearly indicates that the guilty pleas entered in this case were lawful. The Court conducted a thorough plea colloquy pursuant to Supreme Court precedent and Rule 11. The pleas were entered voluntarily and freely with the benefit of competent counsel, as required by applicable constitutional principles.[10] Also, the pleas were made with full knowledge of the consequences. The plea agreement set out the statutory penalties that Scarboro was facing in this case and expressly stated:

---

[9]Since the sentence ultimately imposed upon the defendant is a "result of the proceeding," in order for a petitioner to satisfy the prejudice-prong of *Strickland*, he must demonstrate that there is a reasonable probability that the conditions of his guilty plea or his sentence would have been different but for his trial counsel's errors. See United States v. Boone, 62 F.3d 323, 327 (10th Cir.)(rejecting the defendant's claim that counsel was ineffective in part because the defendant failed to show "that the resulting sentence would have been different than that imposed under the Sentencing Guidelines"), cert. denied, 516 U.S. 1014 (1995). Thus, the *Strickland* test applies to claims involving ineffective assistance of counsel during the punishment phase of a non-capital case. See Glover v. United States, 531 U.S. 198 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993). If the petitioner cannot meet one of *Strickland*'s prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. See also Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

[10]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id. See also United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)(per curiam).

> The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

See Plea Agreement at ¶10. As indicated, Scarboro told the Court during the plea colloquy that he had read, understood and executed the written plea agreement. See Transcript of Plea Colloquy conducted on April 5, 2010, at 16. The Court also extensively reviewed the plea agreement with Scarboro and again advised him of the possible penalties he could receive. Id. at 8-23. As noted herein, Scarboro's sworn statements made during the plea proceeding are presumed true. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Moreover, it cannot be said that defense counsel had promised or guaranteed a particular sentence. Even if counsel had before the change of plea proceeding gave a possible estimate of sentence which turned out to be incorrect, an erroneous estimation of the guidelines does not entitle Movant to relief in that "[a]n erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir. 1981).[11] Movant, therefore,

---

[11]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit B decisions rendered after October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

has failed to demonstrate that counsel was ineffective for any possible incorrect estimation of the sentence. See United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence). See also Cruz v. United States, 188 Fed.Appx. 908, 914 (11th Cir. 2006)(finding no ineffective assistance where movant claimed that counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing because, inter alia, "[t]he court ... explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else.")(unpublished); United States v. Miley, 119 Fed.Appx. 330, 332 (2d Cir. 2005)(holding that any prejudice from defense counsel's alleged misrepresentations as to what movant's sentence would be was dispelled by the time movant pleaded guilty and acknowledged that no promises had, in fact, been made to him outside of the plea agreement)(unpublished); United States v. Macon, 91 Fed.Appx. 239, 243 (3d Cir. 2004)("[W]e have long held that an erroneous sentencing prediction by counsel does not constitute ineffective assistance of counsel where an adequate plea hearing was conducted.")(unpublished); United States v. Smith, 371 Fed.Appx. 901, 905 (10th Cir. 2010)("miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel")(citations omitted)(unpublished).

Further, a defendant's reliance on his attorney's erroneous prediction of a more lenient sentence is not sufficient to render a guilty plea unknowing or involuntary. See United States v. Pease, 240 F.3d 938, 940-41 (11th Cir. 2001)(rejecting argument by defendant who received an enhanced sentence as a career offender that his plea was not knowing and voluntary because court advised him that he faced a statutory maximum of life and despite counsel's

prediction that his potential sentence under the plea agreement would be anywhere from five to ten years); United States v. Harmon, 139 F.3d 899 (5th Cir. 1998)(finding that the defendant could not "claim that his guilty plea was involuntary based upon his attorney's erroneous prediction about the length of the sentence"); United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987). As the Fifth Circuit explained in Daniel v. Cockrell, 283 F.3d 697 (5th Cir. 2002):

> A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

Daniel, 283 F.3d at 703.

As aptly pointed out by the government, whatever hopes Scarboro may have entertained concerning his ultimate sentence, he knew from the provisions of the plea agreement, his discussions with counsel, and the information provided by the Court during the change of plea colloquy, that he was facing a maximum sentence of forty years' imprisonment as to Count 14 and twenty years' imprisonment as to the remaining counts, and that he would not have the option of appealing a sentence within his guidelines range. Due to the efforts of trial counsel, Scarboro received the benefit of a negotiated plea agreement and a sentence which was well-below the statutory penalties and a downward variance from the sentencing guidelines. Thus, Movant's attack upon the lawfulness of his guilty pleas in this collateral proceeding on the basis of ineffective assistance of counsel or otherwise is clearly belied by the record. See Hill v. Lockhart, 474 U.S. 52, 57-59, 106 S.Ct. 366, 88 L.Ed.2d

203 (1985).[12]

## VI. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d

---

[12]The two-part *Strickland* standard is applicable to ineffective-assistance-of-counsel claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 57-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In the context of a guilty plea, the first prong of *Strickland* requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have gone to trial. Hill, 474 U.S. at 56-59. See also Lafler v. Cooper, __ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); Missouri v. Frye, __ U.S. __, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052. The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, __ U.S. __, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (*citing* Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007), *cert. denied*, 554 U.S. 925, 128 S.Ct. 2975, 171 L.Ed.2d 899 (2008)(*quoting* Hill, 474 U.S. at 59-60).

542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Movant cannot satisfy the *Slack* test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VII. <u>Conclusion</u>

For the foregoing reasons, it is recommended that the movant's *ore tenus* motion to withdraw ground four made at the evidentiary hearing be granted. It is further recommended that the motion be denied in all other respects and no certificate of appealability should issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 17th day of September, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Kenneth White, Esq.
     Attorney for Movant
     2937 S.W. 27th Avenue
     Suite 101
     Miami, FL 33133

     Robin Waugh, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132